## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHRISTOPHER TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | Case No._____ |
| | ) | |
| v. | ) | |
| | ) | **COMPLAINT FOR VIOLATIONS OF** |
| CMC MATERIALS, INC., RICHARD S. | ) | **THE FEDERAL SECURITIES LAWS** |
| HILL, BARBARA A. KLEIN, DAVID H. | ) | |
| LI, WILLIAM P. NOGLOWS, PAUL J. | ) | JURY TRIAL DEMANDED |
| REILLY, ANNE K. ROBY, SUSAN M. | ) | |
| WHITNEY, and GEOFFREY WILD, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Christopher Taylor ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE AND SUMMARY OF THE ACTION

1.      Plaintiff brings this action against CMC Materials, Inc. ("CMC" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of their attempt to sell the Company to Entegris, Inc. ("Entegris") through Entegris' wholly owned subsidiary Yosemite Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2.      On December 15, 2021, CMC announced that it had entered into an Agreement and Plan of Merger with Entegris (the "Merger Agreement"), pursuant to which, each CMC stockholder will be entitled to receive (i) $133.00 in cash, and (ii) 0.4506 shares of Entegris

common stock, for each CMC share they own.

3.      On January 28, 2022, CMC filed a Schedule 14A Definitive Proxy Statement (the "Proxy") with the SEC.  The Proxy is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding: (i) CMC's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman"); and (iii) potential conflicts of interest faced by Company insiders.  Without additional information, the Proxy is materially misleading in violation of the federal securities laws.

4.      The stockholder vote to approve the Proposed Transaction is forthcoming.  Under the Merger Agreement, following a successful stockholder vote, the Proposed Transaction will be consummated.  For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of the Company common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

8.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of CMC common stock.

9.     Defendant CMC is a Delaware corporation with its principal executive offices located at 870 North Commons Drive, Aurora, Illinois 60504.  The Company's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "CCMP."

10.    Defendant Richard S. Hill ("Hill") has served as a director of the Company since June 2012.

11.    Defendant Barbara A. Klein ("Klein") has served as a director of the Company since April 2008.

12.    Defendant David H. Li ("Li") has served as President, Chief Executive Officer ("CEO"), and a director of the Company since January 2015.

13.    Defendant William P. Noglows ("Noglows") has served as Chairman of the Board since 2003, and as a director of the Company at all relevant times.

14.    Defendant Paul J. Reilly ("Reilly") has served as a director of the Company since March 2017.

15.    Defendant Anne K. Roby ("Roby") has served as a director of the Company since June 2021.

16.    Defendant Susan M. Whitney ("Whitney") has served as a director of the Company since April 2015.

17.    Defendant Geoffrey Wild ("Wild") has served as a director of the Company since September 2015.

18.     Defendants identified in paragraphs 10 to 17 are collectively referred to herein as the "Board" or the "Individual Defendants."

19.     Relevant non-party Entegris is a Delaware corporation with its principal executive offices located at 129 Concord Road, Billerica, Massachusetts 01821.  It is a leading global developer, manufacturer, and supplier of microcontamination control products, specialty chemicals and advanced materials handling solutions for manufacturing processes in the semiconductor and other high-technology industries.  Entegris operates in three segments: Specialty Chemicals and Engineered Materials, Microcontamination Control and Advanced Materials Handling.  Entegris' common stock trades on the NASDAQ Global Select Market under the ticker symbol "ENTG."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

20.     Incorporated in 1999, CMC provides consumable materials to semiconductor manufacturers, and pipeline and adjacent industry customers in North America, Asia, Europe, the Middle East, Africa, and South America.  CMC's products play a critical role in the production of advanced semiconductor devices, helping to enable the manufacture of smaller, faster and more complex devices by its customers.  CMC is also a leading provider of performance materials to pipeline operators.

21.     The Company operates in two segments, Electronic Materials and Performance Materials.  The Electronic Materials segment consists of CMC's chemical mechanical planarization ("CMP") slurries, CMP pads, electronic chemicals, and materials technologies businesses.  These businesses supply consumable products used in integrated circuit ("IC") device manufacturing and other aspects of the semiconductor and data storage industries.  IC devices, or "chips", are components in a wide range of electronic systems for computing, communications,

manufacturing and transportation.  The Performance Materials segment includes the Company's pipeline and industrial materials ("PIM"), wood treatment, and QED Technologies International, Inc. ("QED") businesses.  CMC is a leading global provider of products, services, and solutions for optimizing pipeline throughput and maximizing performance and safety.  Company PIM products include drag-reducing agents, valve greases, cleaners and sealants, and related equipment supporting pipeline and adjacent industries.  CMC also provides routine and emergency maintenance services as well as training for customers in the pipeline and adjacent industries worldwide.  Through QED, the Company's precision optics business, CMC serves the precision optics industry with capital equipment, consumables, and services.  KMG-Bernuth operates the wood treatment business, which manufactures and sells wood treatment preservatives made from pentachlorophenol for utility poles and crossarms.

22.     On November 10, 2021, the Company announced its fourth quarter and full year fiscal 2021 financial results.  The Company's record quarterly revenue of $311.9 million reflected an increase of 13.8% compared to the same quarter last year.  The increase was driven by continued growth in all businesses in the Electronic Materials segment, which represents more than 80% of the Company's revenue.  Revenue for CMC's fiscal full year 2021 was a record $1.2 billion, an increase of 7.5% compared to the prior year, reflecting 11.5% growth in the Electronic Materials segment.

23.     On December 15, 2021, CMC and Entegris issued a joint press release announcing the Proposed Transaction.  The press release states, in relevant part:

> BILLERICA, Mass. & AURORA, Ill-- Entegris, Inc. (NASDAQ: ENTG) and CMC Materials, Inc. (NASDAQ: CCMP) today announced a definitive merger agreement under which Entegris will acquire CMC Materials in a cash and stock transaction with an enterprise value of approximately $6.5 billion.

***

Under the terms of the agreement, CMC Materials shareholders will receive $133.00 in cash and 0.4506 shares of Entegris common stock for each share of CMC Materials common stock they own.  The total per share consideration represents a 35% premium over CMC Materials' closing price on December 14, 2021, and a 38% premium to the 10-day volume weighted average share price. Upon completion of the transaction, Entegris shareholders will own approximately 91% of the combined company and CMC Materials shareholders will own approximately 9%.

CMC Materials is a leading supplier of advanced materials primarily for the semiconductor industry.  The addition of CMC Materials' leading CMP portfolio will broaden Entegris' solutions set, creating a comprehensive electronic materials offering.  The complementary nature of the companies' technology platforms will enable Entegris to bring to market a broader array of innovative and high-value solutions, at a faster pace.  These enhanced materials and process solutions for the most advanced manufacturing environments will help customers improve productivity, performance and total cost of ownership.

Bertrand Loy, President and Chief Executive Officer of Entegris, said, "Acquiring CMC Materials will further differentiate our unit-driven platform and advance our ability to provide a broad range of process solutions for our customers, at a faster time-to-solution.  The highly complementary combined portfolio creates the industry's most comprehensive and innovative end-to-end electronic materials offering, as well as significantly expands our growing served market and content per wafer opportunity.  In addition, we believe the acquisition will allow us to unlock significant growth through enhanced innovation, scale and execution.  We also expect to utilize our significant cash flows to rapidly reduce leverage.  We are confident that as a combined organization, we will be poised to deliver significant value for our customers, colleagues and shareholders."

"We are excited to be joining forces with Entegris.  The combination provides immediate and substantial value to CMC Materials shareholders and provides meaningful participation in the long-term growth opportunities created by the transaction," said David Li, President and Chief Executive Officer of CMC Materials.  "CMC Materials and Entegris share highly complementary businesses and capabilities grounded in world-class innovation and customer collaboration. As part of Entegris' leading platform, we will maintain our strong focus on technology innovation and customer partnerships and provide expanded opportunities for our employees.  We look forward to what the combined company can accomplish."

**Compelling Strategic and Financial Benefits**

- **Highly Complementary Combined CMP Portfolio Significantly Expands Served Markets and Provides Customers with Comprehensive and**

**Innovative Offering:** Entegris will offer a compelling value proposition to customers in the industry through a broader portfolio of solutions and enhanced operating capabilities, in the fab environment and across the supply chain. The addition of CMC Materials' leading CMP slurries and pads will provide Entegris with a full end-to-end suite of CMP solutions, also including liquid filters (POU and bulk), post-CMP cleaning chemistries and brushes, CMP pad conditioners, particle monitors and chemical packaging products, enabling shorter development times for these solutions. The expanded portfolio will increase Entegris' growing served markets in semiconductor applications to approximately $12 billion as well as its content per wafer opportunity, and it will increase Entegris' unit-driven revenue from 70% to approximately 80%.

- **Accelerates Innovation Capabilities through Greater R&D Scale and Expanded IP Portfolio:** As customers transition to more complex device architectures, there will be increased demand for higher-quality, higher-performing technologies, delivered to market faster. Entegris will have greater capability to innovate and meet evolving customer demand through the deployment of proven, industry-leading commercial, operational and R&D capabilities. In addition, Entegris' deep expertise in purification, contamination control and advanced materials will enhance CMC Materials' long-term technology advancement.

- **Meaningful Revenue Growth and EPS Accretion:** The transaction is expected to be significantly accretive to non-GAAP EPS within the first year post-closing. Entegris expects to realize $75 million in run-rate cost synergies and $40 million in CapEx synergies within 12 to 18 months from the closing of the transaction. In addition, Entegris expects to drive meaningful revenue synergies through co-optimized solutions, cross-selling opportunities and stronger customer response and collaboration.

- **Strong Cash Flow Generation Enables Investments in Growth and Disciplined Deleveraging:** Entegris is targeting pro forma adjusted gross leverage of approximately 4.0x at closing. With approximately $1.1 billion in adjusted EBITDA on a pro forma LTM basis including synergies, Entegris will be well positioned to rapidly reduce its leverage to less than 3.0x, while investing in growth opportunities and continuing its dividend policy for the benefit of Entegris and CMC Materials shareholders. Entegris plans to suspend share repurchases until further notice.

**Additional Terms, Financing and Approvals**

The transaction is to be financed with a combination of equity issued to CMC Materials, new debt and cash on hand. Entegris has obtained fully committed debt financing from Morgan Stanley Senior Funding, Inc.

The transaction is not subject to a financing condition.

The transaction is expected to close in the second half of 2022, subject to the satisfaction of customary closing conditions, including regulatory approvals and approval by CMC Materials shareholders.

**Advisors**

Morgan Stanley & Co. LLC is serving as exclusive financial advisor and Skadden, Arps, Slate, Meagher & From LLP is serving as legal counsel to Entegris. Goldman Sachs & Co. LLC is serving as financial advisor to CMC Materials, and Wachtell, Lipton, Rosen & Katz is serving as legal counsel.

## **The Proxy Misleads CMC Stockholders by Omitting Material Information**

24.     On January 28, 2022, defendants caused to be filed the materially misleading and incomplete Proxy with the SEC. Designed to convince CMC's stockholders to vote in favor of the Proposed Transaction, the Proxy is rendered misleading by the omission of critical information concerning: (i) CMC's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Goldman; and (iii) potential conflicts of interest faced by Company insiders.

### *Material Omissions Concerning CMC's Financial Projections*

25.     The Proxy omits material information regarding the Company's financial projections.

26.     For example, the Proxy fails to disclose all line items underlying the Company's: (i) Adjusted EBITDA; and (ii) Unlevered Free Cash Flow.

27.     The omission of this material information renders certain portions of the Proxy materially misleading, including, inter alia, the following section of the Proxy: "Certain Unaudited Prospective Financial Information."

***Material Omissions Concerning Goldman's Financial Analyses***

28.    The Proxy describes Goldman's fairness opinion and the various valuation analyses performed in support of its opinion.  However, the descriptions of Goldman's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, CMC's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Goldman's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

29.    With respect to Goldman's *Illustrative Discounted Cash Flow Analysis*, the Proxy fails to disclose: (i) the terminal year estimate of the free cash flow to be generated by CMC; (ii) the individual inputs and assumptions underlying the discount rate range of 9.5% to 11.5%; (iii) CMC's net cash; (iv) the number of fully diluted outstanding CMC shares; and (v) the estimated terminal value for CMC.

30.    With respect to Goldman's *Illustrative Present Value of Future Share Price Analysis*, the Proxy fails to disclose: (i) the estimated next twelve months Adjusted EBITDA for CMC utilized in the analysis; (ii) net debt; (iii) the projected year-end fully diluted outstanding shares of CMC; (iv) dividends per share; and (v) the individual inputs and assumptions underlying the discount rate of 11.50%.

31.    With respect to Goldman's *Selected Precedent Transactions Multiples Analysis*, the Proxy fails to disclose: (i) the individual multiples and financial metrics for each of the selected transactions analyzed by Goldman; (ii) CMC's fiscal year 2021 adjusted EBITDA; (iii) net debt; and (iv) the number of fully diluted outstanding CMC shares.

32.    With respect to Goldman's *Premia Analysis*, the Proxy fails to disclose: (i) the transactions observed by Goldman in the analysis; and (ii) the sources thereof.

33.     When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

34.     The omission of this material information renders certain portions of the Proxy materially misleading, including, inter alia, the following section of the Proxy: "Opinion of CMC's Financial Advisor."

***Material Omissions Concerning Company Insiders' Potential Conflicts of Interest***

35.     The Proxy fails to disclose material information concerning the potential conflicts of interest faced by CMC insiders.

36.     The Proxy fails to disclose whether any of CMC's executive officers or directors is continuing their employment following consummation of the Proposed Transaction, as well as the details of all employment and retention-related discussions and negotiations that occurred between Entegris and CMC's executive officers, including who participated in all such communications, when they occurred and their content.  The Proxy further fails to disclose whether any of Entegris' proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

37.     Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

38.     The omission of this material information renders certain portions of the Proxy materially misleading, including, inter alia, the following sections of the Proxy: "Background of the Merger" and "Interests of CMC's Directors and Executive Officers in the Merger."

39.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## <u>COUNT I</u>

### Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

40.     Plaintiff repeats and realleges each and every allegation contained above, as though fully set forth herein.

41.     During the relevant period, defendants disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

42.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy.  The Proxy was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about CMC 's financial projections, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, and potential conflicts of interest faced by Company insiders.  The defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

43.     The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed

Transaction.

44.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

45.     Because of the false and misleading statements in the Proxy, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.   Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

46.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

47.     The Individual Defendants acted as controlling persons of CMC within the meaning of Section 20(a) of the Exchange Act as alleged herein.   By virtue of their positions as officers and/or directors of CMC and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

48.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had

the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

50.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the directors.

51.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, CMC's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of CMC, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated:  February 18, 2022           **LONG LAW, LLC**

                           By:  */s/ Brian D. Long*
                                  Brian D. Long (#4347)

**OF COUNSEL:**                         3828 Kennett Pike, Suite 208
                                  Wilmington, DE 19807
**BRAGAR EAGEL & SQUIRE, P.C.**       Telephone: (302) 729-9100
Alexandra B. Raymond              Email: BDLong@longlawde.com
810 Seventh Avenue, Suite 620
New York, NY 10019                *Attorneys for Plaintiff*
Tel: (646) 860-9158
Fax: (212) 214-0506
Email: raymond@bespc.com